IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED IN OPEN COURT

JUN -5

CLERK, U S DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No.: 1:14-cr-203 |
| ) | |
| MUKESH KUMAR, ) | 18 U.S.C. § 371 |
| a/k/a "Tony Singh," ) | (Conspiracy to Commit Visa Fraud in |
| ) | violation of 18 U.S.C. § 1546(a)) |
| Defendant. ) | |
| ) | Honorable Anthony J. Trenga |

**June 2014 Term – at Alexandria, Virginia**

## INDICTMENT

GENERAL ALLEGATIONS

THE GRAND JURY CHARGES THAT:

At all times relevant to this Indictment:

1. From on or about December 21, 2005, until on or about August 9, 2010, Defendant MUKESH KUMAR ("KUMAR"), a native and citizen of India, worked for Ling Technologies, Inc. ("Ling"), within the Eastern District of Virginia, as Ling's "Senior Recruiter."

2. KUMAR assisted "U.K." in hiring, marketing, and managing the day-to-day responsibilities of other employees at Ling. KUMAR was not employed in the position of "Programmer Analyst" or "Software Developer," or in any position with similar duties, at Ling.

3. Under United States laws and regulations, aliens are not permitted to lawfully work in the United States unless they have been granted permission by the United States government. Certain aliens can obtain a nonimmigrant visa ("NIV") from the United States Department of State

to apply for temporary lawful status in the United States. One type of NIV is issued to temporary specialty occupation workers, known as an H-1B visa.

4. In order for an alien to obtain an H-1B visa, the alien's employer is required to file with the Employment Training Administration ("ETA"), which is within the U.S. Department of Labor ("DOL"), a Labor Condition Application ("LCA") for Nonimmigrant Workers (Form ETA-9035). The employer must set forth in the LCA the name of the employer, the location of the job, the job title, and the salary the employer is going to pay the alien visa holder.

5. Once the ETA-9035 is certified by DOL, the employer may file a Petition for Nonimmigrant Worker (Form I-129) with the U.S. Citizenship and Immigration Services ("USCIS"), which is a component of the U.S. Department of Homeland Security ("DHS").

6. If the Form I-129 is approved, the alien can then apply for an H-1B visa by submitting an online NIV Application. If the application is approved by DOS, the H-1B visa can be issued to the alien. Such an H-1B visa holder is permitted to work only for the employer who signed the Form I-129. An alien who works elsewhere or in a different job violates the conditions of the H-1B. An employer who assists an alien in violating these conditions also violates the conditions of the H-1B visa.

7. A sponsoring employer may renew an alien worker's H-1B visa by repeating the steps described in paragraphs 4, 5, and 6.

8. A sponsoring employer may also seek to hire an alien for permanent work in the United States by filing an Application for Permanent Employment Certification (ETA-9089) with DOL. The ETA-9089 sets forth the name of the employer, the location of the job, the job title, and the salary the employer is going to pay the visa holder.

9. Once the ETA-9089 is approved and certified by DOL, the employer may file an Immigrant Petition for Alien Worker (Form I-140) with USCIS on behalf of the alien. An approved Form I-140 permits an alien to apply for lawful permanent residence status in the United States, also known as a green card.

## Conspiracy to Commit Visa Fraud
(18 U.S.C. § 371)

THE GRAND JURY FURTHER CHARGES THAT:

10. Paragraphs one through nine of this Indictment are specifically re-alleged and incorporated by reference as if they were fully set forth here.

11. From in or about December of 2005 and continuing to on or about May 11, 2011, within the Eastern District of Virginia and elsewhere, defendant MUKESH KUMAR did unlawfully and knowingly combine, conspire, confederate, and agree with U.K. and with other persons, known and unknown to the Grand Jury, knowingly to make under oath, or as permitted under penalty of perjury, knowingly to subscribe as true, a false statement with respect to a material fact in an application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly to present any such application, affidavit, or other document containing any such false statement or which fails to contain any reasonable basis in law or fact, in violation of Section 1546(a) of Title 18, United States Code.

12. In furtherance of this conspiracy, KUMAR assisted U.K. in filing multiple fraudulent H-1B visa applications on behalf of foreign nationals in violation of the H-1B visa program. These applications contained false material statements to components of DOL and DHS, which are within the Executive branch, including filing H-1B visa paperwork on behalf of

foreign nationals for positions that did not exist and failing to pay workers who were supposed to be on Ling's payroll.

## Overt Acts

13. In furtherance of the conspiracy and to effect its objects, KUMAR and his coconspirators committed the following overt acts:

### *KUMAR's H-1B Visa*

a. On or about December 13, 2005, KUMAR and U.K. caused to be filed with USCIS a Form I-129 signed under penalty of perjury, in which U.K. falsely stated that KUMAR would work for Ling as a Programmer Analyst in Vienna, Virginia, within the Eastern District of Virginia.

b. On or about October 4, 2007, KUMAR signed an ETA-9089 (which had been previously filed with DOL), falsely swearing under penalty of perjury his intent to accept the "Software Developer" position listed in the ETA-9089 if his visa were to be approved.

c. On or about October 4, 2007, KUMAR and U.K. caused the ETA-9089, which had been approved by DOL, to be filed with USCIS along with KUMAR's subsequently filed Form I-140.

d. On or about October 15, 2007, KUMAR and U.K. caused to be filed with USCIS a Form I-140 signed under penalty of perjury, which falsely certified that KUMAR would work at Ling as a Software Developer in Herndon, Virginia, within the Eastern District of Virginia.

-4-

e. On or about September 25, 2008, KUMAR and U.K. caused to be filed electronically with DOL an LCA, which falsely attested that KUMAR would work at Ling as a Programmer Analyst in Manassas, Virginia, within the Eastern District of Virginia.

f. On or about September 30, 2008, KUMAR and U.K. caused to be filed with USCIS a Form I-129 signed under penalty of perjury, which falsely certified that KUMAR would work at Ling as a Programmer Analyst in Manassas, Virginia.

g. From or on or about December 21, 2005, until on or about May 31, 2010, KUMAR worked as Ling's "Senior Recruiter," and not as a programmer analyst or software developer, as KUMAR and U.K. falsely attested in the H-1B visa paperwork that KUMAR and U.K. had caused to be filed on behalf of KUMAR.

### *F.S.'s H-1B Visa*

h. Around June 2008, KUMAR, at the direction of U.K., persuaded "F.S." to come to the United States in order to work for Ling Technologies on an H-1B visa that had previously been filed on behalf of F.S. by Company A, for a job location in Little Rock, Arkansas, in violation of the H1B visa program.

i. On or about June 24, 2008, KUMAR directed F.S. to book a flight from Delhi, India, to Little Rock, Arkansas, which was where the job for Company A was purportedly located.

j.  On or about July 1, 2008, KUMAR booked F.S. a flight from Little Rock, Arkansas, to Washington Dulles International Airport, via Atlanta and St. Louis.

k.  At KUMAR's direction, on or about July 4, 2008, F.S. flew from Delhi to Dulles, via Little Rock, entering the United States on the H-1B visa petitioned for by Company A. Kumar told F.S. that Ling would reimburse F.S. for this flight.

l.  On or about July 7, 2008, when F.S. first reported to Ling's office in Manassas, Virginia, KUMAR told F.S. that Ling had no job available for her, and that F.S. needed to look for a job at another company. KUMAR was well aware that F.S. was still purportedly working for Company A on the H-1B visa, in Little Rock, Arkansas.

m.  On or about July 11, 2008, KUMAR and U.K. caused to be filed with USCIS a Form I-129 signed under penalty of perjury, which falsely certified that F.S. would work for Ling as a Programmer Analyst in Manassas, Virginia, and that Ling would pay F.S. a salary of $55,000 per year.

n.  KUMAR and U.K. also caused to be filed with the Form I-129 an offer letter which falsely offered F.S. a job at Ling as a "Programmer Analyst," even though KUMAR well knew that Ling was not in fact offering F.S. any job at Ling.

˘6˘

o.  KUMAR and U.K. also caused to be filed with the Form I-129 an employment contract (the "filed employment contract"), which stated that Ling would pay F.S. an annual salary of $55,000 on a biweekly basis.

p.  KUMAR told F.S. that he would give her a copy of a second employment contract (the "unfiled employment contract"), which KUMAR told F.S. to sign. The unfiled employment contract stated that Ling would split F.S.'s salary with F.S. on a 70/30 basis, with Ling receiving thirty percent of F.S.'s salary. KUMAR told F.S. that the government would not approve an employment contract with a provision such as this, which is why only the filed employment contract was being filed with the government.

q.  On or about August 25, 2008, F.S., without the help of anyone at Ling, found a job working for Company B, for which the work location was Washington, D.C.

### *G.C.'s H-1B Visa*

r.  On or about September 25, 2008, KUMAR and U.K. caused to be filed electronically with DOL an LCA that falsely attested that "G.C." would work for Ling as a Programmer Analyst in Manassas, Virginia, and that Ling would pay G.C. a salary of $55,000 per year.

s.  On or about October 2, 2008, KUMAR and U.K. caused to be filed with USCIS a Form I-129 signed under penalty of perjury, which falsely certified that G.C. would work for Ling as a Programmer Analyst in Manassas, Virginia, and that Ling would pay G.C. a salary of $55,000 per year.

t. Although G.C. began to work at Ling around September 2008, neither KUMAR nor anyone else at Ling paid any money to G.C. until on or about March 16, 2009.

u. On or about March 16, 2009, KUMAR gave G.C. Ling payroll check number 1110 for $1,138.45, signed by U.K., and directed G.C. to deposit the paycheck into G.C.'s personal account; withdraw $1,138.45 in cash; and give the cash to KUMAR.

v. Following KUMAR's instructions, on or about March 17, 2009, G.C. withdrew $1,138.45 in cash, and KUMAR accepted this cash from G.C.

w. On or about April 16, 2009, KUMAR gave G.C. Ling payroll check number 1116 for $1,528.38, signed by U.K., and directed G.C. to deposit the paycheck into G.C.'s personal account, withdraw $700 in cash, and give the cash to KUMAR.

x. On or about April 16, 2009, KUMAR sent an email to G.C., in which KUMAR told G.C. to deposit money into the bank account of N.T.

y. On or about April 16, 2009, KUMAR sent another email to G.C., in which KUMAR told G.C. to deposit $1,000 into N.T.'s account.

z. Following KUMAR's instructions, on or about April 17, 2009, G.C. wrote a $1,000 check to N.T.

aa. At the direction of KUMAR, on or about April 22, 2009, G.C. withdrew $700 in cash, and KUMAR accepted this cash from G.C.

bb. On or about May 12, 2009, KUMAR gave G.C. Ling payroll check number 1121 for $1,535.41, signed by U.K., and directed G.C. to deposit the paycheck into G.C.'s personal account; withdraw $1,535.41 in cash; and give the cash to KUMAR.

cc. Following KUMAR's instructions, on or about May 14, 2009, G.C. withdrew $1,535.41 in cash, and KUMAR accepted this cash from G.C.

dd. On or about June 17, 2009, KUMAR gave G.C. Ling payroll check number 1126 for $1,535.41, signed by U.K., and directed G.C. to deposit the paycheck into G.C.'s personal account; write a $1,030 check to N.T.; write an $805.41 check to KUMAR; and to give the checks to KUMAR.

ee. Following KUMAR's instructions, on or about June 17, 2009, G.C. wrote a $1,030 check to N.T., and KUMAR accepted this check from G.C.

ff. Also following KUMAR's instructions, on or about June 30, 2009, G.C. wrote an $805.41 check to KUMAR, and KUMAR accepted this check from G.C. as well.

gg. Around October 2009, G.C. approached KUMAR about leaving Ling to work for Company C, but KUMAR said that KUMAR and U.K. would not allow G.C.'s visa to be transferred to Company C unless G.C. not only provided Ling with two checks of approximately $2,058 each, but also paid Ling an additional $8,000.

hh. On or about October 15, 2009, KUMAR demanded that G.C. sign a "training document," the terms of which required G.C. to pay Ling a total of $8,000

spread out over sixteen checks of $500 each. KUMAR told G.C. that Ling would then cash one check each month over the next sixteen months in order for Ling to recoup the costs that it had spent on G.C. KUMAR told G.C. to leave the payee on the checks blank.

ii. After G.C. stopped payment on these checks, KUMAR repeatedly called and emailed G.C. about getting this $8,000. When G.C. stopped responding to these calls and emails, KUMAR tried contacting the CEO of Company C to get G.C. to respond.

jj. From the beginning of G.C.'s employment with Ling, on or about September 25, 2008, until on or about November 25, 2009, neither Kumar nor anyone else at Ling paid G.C. any money that G.C. was permitted to keep.
(In violation of Title 18, United States Code, Section 371).

A TRUE BILL:

*Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office.*
Foreperson of the Grand Jury


Dana J. Boente
United States Attorney

By: ___Jason M. Scheff___
Jason M. Scheff
Special Assistant United States Attorney

Allison Ickovic
Special Assistant United States Attorney (LT)